# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA — ANCHORAGE DIVISION



RECEIVED

MAY 08 2026

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

**Mark O. Nardini,**

Complainant,

v.

**Bill Walker, former Governor of Alaska,** in his historical role for actions taken during

his administration;

**State Officials** in Their Official Capacities; and

**Administrative Officers** Responsible for the Permanent Fund Dividend Program,

Defendants. *ATTACHED*

Case No. 3:26- Cv - 00191-SLG

**COMPLAINT**

DEFENDENTS CONT.

JANELLE EARCS — ADMINISTRATIVE OFFICERS OF DEPT OF REVENUE
DIRECTOR

---

JANELLE EARCS —          ALASKA DEPT. OF REVENUE
ACTING COMMISSIONER

---

KELLEY TSHIBAKA         ALASKA DEPT. OF ADMINISTRATION
COMMISSIONER

---

DEVEN MITCHELL          PERMANENT FUND DIV. DIVIDEND DIVISION
DIRECTOR/CEO

DEVIN MITCHEL           ALASKA PERMANENT FUND
EXECUTIVE DIRECTOR                CORPORATION

---

LACEY SANDERS           DIRECTOR STATE BUDGET DIRECTOR
                        OFFICE OF MANAGEMENT & BUDGET
                        STATE CAPITOL BUILDING

---

PAT PITNEY              LEGISLATIVE FINANCE DIRECTOR
                           "              "       DIVISION

---

BILL WALKER             FORMER GOVERNOR OF ALASKA

---

~~STEVEN~~
STEPHEN J. COX  ALASKA ATTORNEY GENERAL

---

GOV. MIKE DUNLEAVY      GOV, STATE OF AK

Case 3:26-cv-00191-SLG   Document 1   Filed 05/08/26   Page 2 of 35

# Table of Contents

I. INTRODUCTION / STATEMENT OF THE CASE .......................4    ¶ 1 - 8

II. PARTIES ........................................................5    ¶ 9 - 12

    A. Plaintiff ................................................ 5    ¶ 9

    B. Overview of Defendants .................................. 5    ¶ 10 - 12

    C. Tier 1 — Executive Leadership ........................... 6    ¶ 13

    D. Tier 2 — Senior State Officials and Fiscal Officers ............... 6    ¶ 14 - 17

    E. Tier 3 — Administrative Officers and Implementing Officials ... 7    ¶ 18 - 21

III.    JURISDICTION AND VENUE ...........................................8    ¶ 22 - 25

IV.    FEDERAL CONSTITUTIONAL PROVISIONS....................... 9    ¶ 26 - 29

V.    FEDERAL STATUTES SUPPORTING JURISDICTION AND

    RELIEF .................................................. 10    ¶ 30 - 32

VI.    STATEMENT OF FACTS ................................... 10    ¶ 33 - 40

    A. The 33-Year Statutory Covenant (1982–2015) ....................... 10    ¶ 33 - 36

    A-1. The 1978 Constitutional Baseline (Historical Evidence) ......... 12    ¶ 36A - F

    B. The Break in the Covenant — 2016 (Bill Walker) ................... 13    ¶ 37 - 40

    C. The Decade of Diversion (2016–Present) .............................. 14    ¶ 41 - 44

    D. Undersized Population / Oversized Government ....................15    ¶ 45 - 47

    E. The Inaccessible Capitol ................................................. 15    ¶ 48 - 50

    F. Structural Failures Enabling the Diversion ............................ 15    ¶ 51 - 54

    G. The Causal Chain ........................................................ 16    ¶ 55 - 57

H. Summary of the Structural Narrative ................................... 16     ¶ 58 - 59

I. Where Wielechowski Ends — and This Case Begins ...............17     ¶¶ 59A–59C

**VII. THE STATE'S REVENUE WINDFALL & THE WINDFALL PARADOX.**18     ¶ 60 - 67

**VIII.  CANNIBAL BUDGET, PHASE II**......................................... 19     ¶ 68 - 71

**IX.  VIOLATION OF ALASKA CONSTITUTIONAL AND**

       **STATUTORY REQUIREMENTS** ...................................... 20     ¶ 72 - 74

**X.  CLIMS FOR RELIEF**.................... ............................20     ¶ 75 - 78

       Count I — Due Process ...................................................21     ¶ 68 - 71

       Count II — Equal Protection ............................................ 21     ¶ 79 -81

       Count III — 42 U.S.C. § 1983 ........................................ 22     ¶ 82 - 84

**XI.  PRAYER FOR RELIEF** ................................................ 22     ¶ 85 - 100

       A.  Declaratory Relief ................................................ 22     ¶ 86 - 87

       B.  Injunctive Relief.......................................................23     ¶88 - 90

       C.  Restitution...................................................... 23     ¶ 91

       D.  Compensatory Damages (with Suspended Portion)....24     ¶ 92 - 93

       E.  Punitive Damages (Suspended Sword Provision)...... 24     ¶ 94 - 95

       F.  Structural Relief — Capitol Relocation Escrow

           (Willow Provision)...............................................25     ¶96 - 97

       G.  Restoration Fund and Structural Integrity................. 26     ¶ 98 - 99

       H.  Other Relief.......................................................26     ¶ 100

**XII.  THE SUSPENDED SWORD PROVISION**......................... 27     ¶ 101 - 105

**XIII.  PUBLIC INTEREST** AND STRUCTURAL IMPLICATIONS... 28     ¶ 106 - 109

**XIV.  CLOSING INVOCATION** - OF THE PRAYER FOR RELIEF... 29     ¶ 110 - 115

**XV.** **JURY DEMAND**............................................................. 31    ¶ 116

**XVI** **TABLE OF AUTHORITIES**............................................. 32

**XVII.** **Exhibits A -T**............................................................. 33    ¶ 117 - 133

**CERTIFICATE OF SERVICE**.................................................. 35

---

# INTRODUCTION / STATEMENT OF THE CASE

1. This Narrative Complaint documents the structural, historical, and statutory events that led to the diversion of the Permanent Fund Dividend (PFD) beginning in 2016 and continuing to the present.

2. For 33 years, the statutory PFD formula enacted in 1982 was followed without deviation. A-1. The 1978 Constitutional Baseline

3. In 2016, then-Governor **Bill Walker** unilaterally reduced the PFD through executive action — the first break in the statutory covenant.

4. This break initiated a decade-long pattern of diversion, transforming the PFD from a statutory entitlement into a discretionary budget item.

5. The State now enjoys a significant revenue windfall due to elevated global oil prices, yet continues to withhold the statutory PFD.

**6.** This contradiction — reducing the PFD in lean years and refusing to restore it in prosperous years — is the **Windfall Paradox.**

**7.** The State's continued diversion during a period of abundance marks **Cannibal Budget, Phase II**, in which the State consumes the PFD not out of necessity but out of habit.

**7A.** This Complaint builds upon, but is not barred by, the Alaska Supreme Court's decision in Wielechowski v. State. That decision addressed only whether the statutory PFD formula constitutes an appropriation. It did not authorize permanent diversion, did not invalidate the statutory formula, and did not address federal constitutional claims. This action therefore picks up where Wielechowski leaves off.

**8.** This document is not a legal pleading. It is a structured narrative designed to illuminate the statutory conflict, the historical break, the resulting harm, and the systemic conditions that allowed the diversion to persist.

---

## II. PARTIES

### A. Plaintiff

**9.** Plaintiff **Mark O. Nardini** is a long time Alaskan, veteran, and eligible Permanent Fund Dividend (PFD) recipient.

## B. Overview of Defendants

10. Defendants are state officials responsible for the administration, calculation, and distribution of the PFD, as well as fiscal and executive decisions affecting the program.

11. Former Governor **Bill Walker** is named in his official capacity for actions taken under the color of state law that initiated the first breach of the statutory PFD formula in 2016. Former Governor **Bill Walker** established the precedent for the statutory violations that continue to this day.

12. Defendants are sued in their official capacities.

---

## C. Tier 1 — Executive Leadership

13. **Former Governor Bill Walker**, in his official capacity, initiated the 2016 veto that broke the801 statutory formula.

## D. Tier 2 — Senior State Officials and Fiscal Officers

14. Defendant Commissioner of the Alaska Department of Revenue is responsible for administering the PFD program and implementing statutory and fiscal directives affecting PFD distributions.

**15.** Defendant Commissioner of the Alaska Department of Administration is responsible for statewide financial operations and participated in implementing appropriations that reduced PFD payments.

**16.** Defendant Director of the Permanent Fund Dividend Division is responsible for administering the PFD program, processing applications, and issuing payments to eligible residents.

**17.** Defendant Executive Director of the Alaska Permanent Fund Corporation is responsible for managing the Permanent Fund and coordinating transfers from the Earnings Reserve Account to the dividend fund.

## E. Tier 3 — Administrative Officers and Implementing Officials

**18.** Defendant State Budget Director is responsible for preparing and advising on annual budgets that included appropriations inconsistent with the statutory PFD formula.

**19.** Defendant Legislative Finance Director is responsible for fiscal analysis and legislative budget recommendations that contributed to appropriations below the statutory formula.

**20.** Defendant Administrative Officers within the Department of Revenue and the Department of Administration are responsible for implementing PFD reductions, processing payments, and executing fiscal directives that resulted in the diversion of PFD funds.

**21.** Plaintiff alleges that each Defendant participated directly or indirectly in the decisions, approvals, appropriations, or administrative actions that resulted in the diversion of PFD funds from eligible residents.

---

# III. JURISDICTION AND VENUE

**22.** This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

**23.** Jurisdiction is also proper under 28 U.S.C. § 1343 because Plaintiff seeks redress for the deprivation of rights secured by the Constitution under color of state law.

**24.** This Court may issue declaratory relief under 28 U.S.C. §§ 2201–2202.

**25.** Venue is proper in the District of Alaska under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this District and the Defendants reside or perform official duties within the State of Alaska.

---

## IV. FEDERAL CONSTITUTIONAL PROVISIONS

26. Plaintiff's claims arise under the Constitution of the United States, including the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.

27. The Due Process Clause prohibits states from depriving any person of property without due process of law. Plaintiff alleges that the State reduced and diverted PFD payments without providing notice, a hearing, or any procedural safeguards.

28. The Equal Protection Clause requires that similarly situated individuals be treated alike. Plaintiff alleges that the State's actions resulted in unequal treatment of eligible residents by reducing statutory payments without lawful justification.

29. Article IV, Section 4 of the United States Constitution guarantees every state a republican form of government. Plaintiff alleges that the State's actions, including the unilateral alteration of a statutory formula, undermined legislative authority and public participation.

# V. FEDERAL STATUTES (SUPPORTING JURISDICTION AND RELIEF

**30.** Plaintiff brings this action under 42 U.S.C. § 1983, which provides a cause of action against persons acting under color of state law who deprive individuals of rights secured by the Constitution.

**31.** Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201–2202, which authorize federal courts to declare the rights and legal relations of parties and to grant further necessary or proper relief.

**32.** Plaintiff seeks redress under 28 U.S.C. § 1343, which grants jurisdiction over civil actions seeking to remedy the deprivation of constitutional rights under color of state law.

---

# VI. STATEMENT OF FACTS

## A. The 33-Year Statutory Covenant (1982–2015)

**33.** The Alaska Permanent Fund Dividend program was established by statute to distribute a portion of Permanent Fund earnings to eligible residents. For more than three decades, the State applied the statutory formula enacted by the Legislature without deviation.

**34.** The formula provided a consistent, mandatory method for calculating annual PFD amounts. It remained in force unless and until amended by the Legislature — which never occurred during this period.

**35.** Throughout these 33 years, the State followed the formula faithfully, and residents relied on the stability and predictability of the program.

**36.** This long-standing compliance created a legitimate expectation that PFD payments would continue to be calculated according to statute unless the Legislature formally amended the law.

- Article IX, Section 15 of the Alaska Constitution required 25% of mineral
- royalties to be deposited into the Permanent Fund principal.
- AS 43.23.025 required 50% of realized earnings to be paid to Alaskans through the PFD.
- For 33 years, the State complied.
- This created both a statutory property interest and a civic covenant between the State and its residents.

---

## A-1. The 1978 Constitutional Baseline

## (Newly Discovered Historical Evidence)

**36A.** In 1978, the Alaska Permanent Fund's first audited financial statements were prepared by Deloitte Haskins & Sells. These statements document the Fund's original structure immediately following the 1977 constitutional amendment and establish the constitutional baseline from which all later statutory developments—including the Permanent Fund Dividend—must be understood.

**36B.** The audit confirms that the Permanent Fund was originally structured as a principal-only savings account, with all investment earnings transferred annually to the State's General Fund. The audit states that the amendment required mineral revenues to be "set aside for the use and benefit of present and future Alaskans," and that "income realized from investment of such amounts be transferred to the State's General Fund."

**36C.** The 1978 audit shows that the Fund held only $54.4 million in net assets, invested exclusively in conservative fixed-income instruments such as U.S. Government obligations, corporate bonds, bankers' acceptances, certificates of deposit, and securities purchased under agreements to resell. No dividend program existed in 1978.

**36D.** The Legislature later created the Permanent Fund Dividend program as a statutory override of the original practice of transferring earnings to the General Fund. This statutory structure redirected earnings to individual Alaskans and remained in force for 33 years without deviation.

**36E.** This contemporaneous historical record demonstrates that the Legislature has repeatedly altered the Fund's operational structure and that the PFD program is a deliberate statutory framework with the force of law. The State's current practice of diverting PFD funds to general governmental spending is inconsistent with the statutory structure the Legislature itself enacted.

**36.F** **The 1978 audit further establishes that the State's present "appropriation theory" is NOT grounded in the original constitutional design.** Instead, it is a recent deviation from the statutory framework governing the Permanent Fund Dividend. The historical baseline confirms that the Legislature's later creation of the PFD program was a conscious statutory choice that cannot be nullified through non-appropriation or executive action.

## B.     The Break in the Covenant — 2016

37.    In 2016, then-Governor Bill Walker vetoed half of the statutory transfer from the Permanent Fund Earnings Reserve to the dividend fund, rebducing the PFD amount.

38.    This action altered the statutory formula without amending the underlying statute. The Legislature did not repeal or modify the formula, and no statutory

authority permitted the executive branch to reduce the transfer unilaterally.

39. The veto resulted in a substantial decrease in the PFD amount paid to eligible residents and marked the first deviation from the statutory formula in program history.

40. Plaintiff alleges that the 2016 action unlawfully suspended a statute and deprived residents of property without due process.

- In 2016, Governor Walker vetoed half the statutory PFD.

- This was the first deviation from the statutory formula in program history.

- The statute remained un-repealed.

- This unilateral action created the precedent for all subsequent diversions.

## C. The Decade of Diversion (2016–Present)

41. After 2016, subsequent administrations and legislatures continued to appropriate PFD amounts below the statutory formula.

42. These appropriations diverted funds from the dividend program to general governmental purposes, including operating budgets and agency expenditures.

43. The diversions occurred annually and cumulatively withheld billions of dollars from eligible residents.

44. The Legislature treated the Earnings Reserve Account as a general revenue source, despite the absence of statutory amendment authorizing such

treatment.

## D. Undersized Population / Oversized Government

45. Alaska's small population and large governmental structure created fiscal pressures that contributed to repeated diversions of PFD funds.

46. Rather than reducing expenditures or identifying alternative revenue sources, the State relied on PFD reductions to address budget shortfalls.

47. This reliance transformed the PFD into a fiscal balancing mechanism inconsistent with the statutory purpose of the program.

## E. The Inaccessible Capitol

48. The Alaska Legislature meets in Juneau, a location geographically isolated from 95.6% of the State's population.

49. Travel to Juneau is costly and often requires air travel, limiting public access and participation in legislative proceedings.

50. This structural barrier contributed to inadequate public oversight during key fiscal decisions affecting the PFD.

## F. Structural Failures Enabling the Diversion

51. The State did not provide individualized notice to residents before reducing PFD payments.

**52.** The State did not provide a hearing or any opportunity for residents to contest the reductions.

**53.** The absence of procedural safeguards enabled the State to reduce the PFD without public process, transparency, or accountability.

**54.** These failures created conditions in which the diversion could continue unchecked.

## G. The Causal Chain

**55.** Executive actions, legislative appropriations, and administrative implementation collectively resulted in the diversion of PFD funds from eligible residents.

**56.** These actions were taken under color of state authority and directly caused financial harm to Plaintiff and other eligible residents.

**57.** The pattern established in 2016 normalized the diversion, entrenched it structurally, and allowed it to persist for a decade.

## H. Summary of the Structural Narrative

**58.** The diversion of PFD funds represents a departure from statutory requirements and has resulted in the deprivation of a long-standing statutory expectation.

**59.** The break in the covenant, the decade of diversion, and the structural conditions enabling it form the foundation of the narrative presented in this Complaint.

## I. Where Wielechowski Ends — and This Case Begins

**59A.** The Alaska Supreme Court's decision in Wielechowski v. State addressed a narrow question: whether the statutory PFD formula itself constitutes an appropriation. The Court held that it does not, and that the Legislature must appropriate funds before they may be distributed. The Court did not hold that the Legislature may permanently disregard the statutory formula, nor did it authorize the State to divert PFD funds indefinitely.

**59B.** Wielechowski did not address federal constitutional claims, including due process, equal protection, or the structural guarantees of a republican form of government. It did not address the 33-year statutory covenant, the 1978 constitutional baseline, the Windfall Paradox, the Cannibal Budget, or the systemic failures that enabled a decade of diversion. The Court expressly acknowledged that the PFD statute remains valid law.

**59C.** This Complaint therefore picks up where Wielechowski leaves off...

• The Alaska Supreme Court's decision in Wielechowski did not authorize permanent diversion of PFD funds.

• Wielechowski did not invalidate the statutory formula; the statute remains valid law.

• Wielechowski did not address federal due-process or equal-protection claims, nor did it consider the structural failures that enabled a decade of diversion.

• This Complaint therefore picks up where Wielechowski necessarily ends, addressing the constitutional and structural issues the Alaska Supreme Court did not reach.

# VII. THE STATE'S REVENUE WINDFALL AND THE WINDFALL PARADOX

60. Recent increases in global oil prices have significantly expanded Alaska's unrestricted general fund revenues.

61. The State now receives substantially higher petroleum royalties, production taxes, and corporate income taxes.

62. The Legislature has publicly acknowledged that elevated oil prices have created a fiscal surplus.

63. Despite this surplus, the State has not restored the statutory PFD formula.

64. Nor has it repaid the amounts withheld during the years of diversion.

65. This contradiction — reducing the PFD in lean years and refusing to restore it in prosperous years — is the **Windfall Paradox.**

66. The paradox reveals that the PFD reductions were not driven by fiscal necessity but by political convenience.

**67.** The State's continued diversion during a period of abundance marks

**Cannibal Budget, Phase II,** in which the State consumes the PFD

not out of desperation but out of habit.

---

## VIII. CANNIBAL BUDGET, PHASE II

**68.** The State's continued diversion during a period of abundance marks Cannibal

Budget, Phase II.

**69.** In Phase I, the State consumed the PFD out of claimed necessity.

**70.** In Phase II, the State consumes the PFD out of habit.

**71.** The crisis has passed, but the cannibalism remains.

---

## IX. VIOLATION OF ALASKA CONSTITUTIONAL AND

## STATUTORY REQUIREMENTS

**72.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**73.** The State failed to follow statutory requirements governing the calculation and

distribution of PFD payments.

**74.** The State's actions violated constitutional provisions requiring lawful fiscal management and equal protection.

---

# X. CLAIMS FOR RELIEF

## Count I — Violation of Procedural Due Process (Fourteenth Amendment)

**75.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**76.** Plaintiff has a legitimate claim of entitlement to PFD payments calculated according to the statutory formula.

**77.** The State reduced and diverted PFD payments without providing notice, a hearing, or any procedural safeguards.

**78.** These actions deprived Plaintiff of property without due process of law, in violation of the Fourteenth Amendment.

**78A.** The Wielechowski decision did not address whether the State may reduce or divert statutory entitlements without notice, hearing, or procedural safeguards. This action raises federal due-process questions that were not before the Alaska Supreme Court.

## Count II — Violation of Equal Protection (Fourteenth Amendment)

**79.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**80.** The State treated eligible residents unequally by reducing statutory payments without lawful justification.

**81.** The State's actions lacked a rational basis and resulted in unequal treatment of similarly situated individuals.

**81A.** Wielechowski did not consider whether the State's pattern of selective under-appropriation violates the Equal Protection Clause. This Complaint asserts federal equal-protection claims that fall outside the scope of the state-court decision.

## Count III — Unlawful Action Under Color of State Law (42 U.S.C. § 1983)

**82.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**83.** Defendants acted under color of state law in altering, reducing, and diverting PFD payments.

**84.** These actions deprived Plaintiff of rights secured by the Constitution, including due process and equal protection.

**84A.** Because Wielechowski did not address federal constitutional rights, it does not preclude § 1983 relief. This action seeks remedies for federal violations that the Alaska Supreme Court did not consider.

---

# XI.   PRAYER FOR RELIEF

**85.** Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief.

## A.   Declaratory Relief

**86** A declaratory judgment that the State of Alaska's reduction and diversion of Permanent Fund Dividend funds, without statutory amendment or constitutionally required procedural protections, violates the Due Process Clause, the Equal Protection Clause, and 42 U.S.C. § 1983.

**87.** A declaratory judgment that the statutory Permanent Fund Dividend formula codified in AS 43.23.025 remained in full force and effect from 2016 to the present and was unlawfully disregarded.

## B.   Injunctive Relief

**88.** A preliminary and permanent injunction prohibiting the State of Alaska and its

officers from diverting, reducing, withholding, or reallocating Permanent Fund Dividend monies in violation of statute.

89. An order requiring the State to administer the Permanent Fund Dividend program in accordance with the statutory framework that governed distributions from 1982 through 2015 unless and until the Legislature lawfully amends the governing statutes.

90. An order requiring the State to preserve all records, data, and financial information related to Permanent Fund Dividend calculations, appropriations, transfers, and administrative actions.

## C.  Restitution

91. An award of restitution in the amount of **approximately thirty-two billion dollars ($32,000,000,000),** representing the cumulative Permanent Fund Dividend amounts unlawfully withheld or diverted from Plaintiff and similarly situated residents from 2016 to the present.

## D.  Compensatory Damages (with Suspended Portion)

92. An award of **compensatory damages in the amount of thirty-two billion dollars ($32,000,000,000),** representing the structural, economic, and constitutional harms caused by the decade-long diversion of statutory PFD funds.

93. Plaintiff requests that **twenty-two billion dollars ($22,000,000,000)** of the compensatory damages be **suspended,** contingent upon the State's full and ongoing compliance with statutory and constitutional requirements governing the Permanent Fund Dividend.

## E. Punitive Damages (with Suspended Sword Provision)

94. An award of **punitive damages in the amount of ninety-six billion dollars ($96,000,000,000),** imposed to deter future violations of statutory and constitutional requirements.

95. Plaintiff requests that **eighty-six billion dollars ($86,000,000,000)** of the punitive damages be **suspended** under the **Suspended Sword Provision**, to be automatically reinstated upon any future diversion of Permanent Fund Dividend funds in violation of statute.

## F. Structural Relief — Capitol Relocation Escrow (Willow Provision

96. Plaintiff requests the establishment of a restricted, interest-bearing escrow **account** in the amount of **twenty billion dollars ($20,000,000,000)** dedicated exclusively to the relocation of the Alaska State Capitol to Willow, as twice approved by Alaska voters.

97. Plaintiff further asserts that the FRANK Initiative remains in full legal force and effect, having never been repealed, amended, or satisfied by the State. The State's decades-long failure to comply with FRANK's mandatory fiscal-disclosure requirements does not extinguish the people's twice-expressed mandate for relocation, nor does it relieve the State of its statutory and constitutional obligations. To preempt any future claim that FRANK is obsolete, inapplicable, or unenforceable, Plaintiff requests that the Court recognize the **twenty-billion-dollar ($20,000,000,000) Capitol Relocation Escrow** as a judicially supervised mechanism that fully satisfies FRANK's disclosure and cost-verification requirements. This ensures that the State cannot evade voter mandates through inaction, delay, or procedural neglect, and restores the structural transparency FRANK was enacted to guarantee.

## G. Restoration Fund and Structural Integrity

98. Plaintiff requests that the Court recognize the Capitol Relocation Escrow as **The Capitol Relocation Fund**, a structural remedy aligned with the FRANK Initiative and the people's twice-expressed mandate for relocation.

99. Plaintiff requests that the Court approve the combined damages structure — including restitution, compensatory damages with a suspended portion, punitive damages with a suspended portion, and the **Capitol Relocation Escrow** — as a lawful, proportional, and necessary remedy to restore structural integrity and deter future violations.

## H. Other Relief

**100.** An award of reasonable costs as permitted by law, and such other and further relief as the Court deems just and proper.

**100A.** Plaintiff further requests that the Court recognize that the Alaska Supreme Court's decision in Wielechowski did not authorize permanent diversion of PFD funds, did not invalidate the statutory formula, and did not address federal constitutional claims. This Court therefore retains full authority to grant declaratory, injunctive, and structural relief.

- The Alaska Supreme Court's decision in Wielechowski did not authorize permanent diversion of PFD funds.

- Wielechowski did not invalidate the statutory formula; the statute remains valid law.

- Wielechowski did not address federal due-process or equal-protection claims, nor did it consider the structural failures that enabled a decade of diversion.

- This Complaint therefore picks up where Wielechowski necessarily ends, addressing the constitutional and structural issues the Alaska Supreme Court did not reach.

---

## XII. THE SUSPENDED SWORD PROVISION

**101.** Plaintiff requests that the Court adopt a Suspended Sword Provision, a judicially recognized deterrent mechanism under which any future diversion of Permanent Fund Dividend funds in violation of statute shall reactivate the suspended

portion of punitive damages, ensuring permanent compliance and preventing structural erosion of the Permanent Fund Dividend program.

102. Plaintiff further requests that the Court recognize the Capitol Relocation Escrow as The Capitol Restoration Fund, a structural remedy aligned with the FRANK Initiative's fiscal-disclosure requirements and the people's twice-expressed mandate for relocation.

103. Plaintiff asserts that although the FRANK Initiative was invoked in 1972, 1984, and 1994 to require full cost disclosure before relocation could proceed, the State's failure to act has left the mandate unfulfilled, warranting judicially supervised structural relief.

104. Plaintiff requests that the Court approve the Twenty-Billion-dollar combined-damages structure as a reasonable and justified remedy, anchored in historical state-certified data, adjusted using standard CPI methodology, proportional to the scale and duration of the alleged diversion, purpose-linked through the Capitol Relocation Escrow, and partially suspended under the Suspended Sword Provision to demonstrate deterrence rather than retribution.

105. Plaintiff requests that the Court recognize the Willow Provision as a complete, lawful, and fiscally transparent mechanism to implement the people's mandate and restore structural integrity to Alaska's civic institutions.

# XIII.  PUBLIC INTEREST AND STRUCTURAL IMPLICATIONS

**106.**   The PFD is a statutory entitlement designed to ensure that all Alaskans share in the wealth generated from the State's natural resources.

**107.**   The diversion undermines public trust, statutory integrity, and fiscal transparency.

**108.**   The continued withholding of the statutory PFD during a revenue surplus erodes confidence in the rule of law.

**109.**   The public interest strongly favors adherence to statutory mandates.

---

# XIV. CLOSING INVOCATION - OF THE PRAYER FOR RELIEF

**110.**   112. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

**111.** Plaintiff asserts that the Permanent Fund Dividend program, as enacted by statute, created enforceable expectations and property interests that may not be altered, reduced, or diverted without lawful authority and constitutionally required procedures. The statutory framework governing the PFD represents a deliberate legislative override of the Permanent Fund's original structure, as documented in the Fund's first audited financial statements in 1978.

**112.** The 1978 audit establishes the constitutional baseline: the Permanent Fund was originally a principal-only savings account, with all investment income transferred annually to the State's General Fund. No dividend program existed. The Legislature later created the PFD program as a statutory mechanism to ensure that the wealth generated from Alaska's natural resources would be shared directly with its people. The historical record also makes clear that **the Permanent Fund was never intended to operate as a World-Class Hedge Fund or SpeculativeInvestment Vehicle;** it was designed as a conservative, low-risk repository of public wealth, with earnings distributed according to statute. The State's current practice of diverting PFD funds is not a continuation of the original constitutional design, but a recent deviation from the statutory framework the Legislature itself enacted.

**113.** Plaintiff alleges that the State's actions constitute ongoing violations of federal constitutional rights and statutory obligations. By disregarding the statutory formula without amendment, the State has impaired vested expectations, violated due process, and undermined the rule of law. The historical record confirms that the PFD program is not an incidental or discretionary feature of state finance, but a legislatively created entitlement that cannot be nullified through non-appropriation or executive action.

**114.** Plaintiff respectfully invokes the equitable and remedial powers of this Court to restore compliance with governing law, to remedy past harms, and to prevent further erosion of statutory and constitutional protections. The 1978 constitutional baseline underscores the necessity of judicial intervention: without enforcement, the State's

deviation from statutory mandates will continue unchecked, further destabilizing the structural integrity of the Permanent Fund Dividend program.

**114A.** Plaintiff acknowledges the Alaska Supreme Court's decision in Wielechowski, but that decision addressed only the narrow question of whether the statutory formula constitutes an appropriation. It did not authorize the State to disregard the statute indefinitely, nor did it address the federal constitutional violations presented here. This action therefore continues the inquiry where Wielechowski necessarily stopped.

**115.** Plaintiff submits this Closing Invocation in support of the Prayer for Relief and respectfully requests judgment consistent with the relief sought herein, including restoration of statutory compliance, recognition of the historical and legal framework governing the Permanent Fund, and protection of the rights of eligible residents.

## XV.  JURY DEMAND

**116.**  Plaintiff demands a trial by jury on all issues so triable under Rule 38 of the Federal Rules of Civil Procedure.

**Respectfully submitted,**


/s/ Mark O. Nardini

Mark O. Nardini, A.I.A.

Plaintiff, Appearing Pro Se

Wasilla, Alaska

Date: _____

# XVI. TABLE OF AUTHORITIES

**Cases**

- Wielechowski v. State, 403 P.3d 1141 (Alaska 2017) ..............17, 20, 21, 22, 25

## CONSTITUTIONAL PROVISIONS

**U.S. Const. amend. XIV, § 1 (Due Process Clause)** ......¶¶ 26–29, 75–78, 78A, 82–84

**U.S. Const. amend. XIV, § 1 (Equal Protection Clause)** ... ¶¶ 26–29, 79–81, 81A, 82–84

**U.S. Const. art. IV, § 4 (Guarantee Clause)** ..................¶ 29

## FEDERAL STATUTES

- 42 U.S.C. § 1983 ...................................…................ ¶¶ 30, 82–84, 84A, 86
- 28 U.S.C. § 1331 .................................................. ¶ 22
- 
- 28 U.S.C. § 1343 ..................................................¶¶ 23, 32
- 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act) ... ¶¶ 24, 31, 86–87

## Alaska Const. art. IX, § 15 (Permanent Fund) ............ ¶¶ 33–36, 36A–36F

- Alaska Const. art. I, § 1
- Alaska Const. art. VIII, § 2
- Alaska Const. art. IX, § 7

## ALASKA STATUTES

AS 43.23.025 (Permanent Fund Dividend Formula) ...... ¶¶ 33–36, 36D–36F, 87

FRANK Initiative (AS 44.06.050–060) ........................ ¶¶ 96–97

## OTHER AUTHORITIES

1978 Deloitte Haskins & Sells Audit of the
Alaska Permanent Fund ..........................................¶¶ 36A–36F

---

# XVII. EXHIBITS [A – T]

**Exhibit A:** Federal Summons Service Tracking Log

**Exhibit B:** Dividend Summary Table (2015–2025)

**Exhibit C:** Annual Report Excerpts — State Fiscal Conditions (2016–2025)

**Exhibit D:** Constitutional Reference Packet

**Exhibit E:** Per-Capita Operating Budgets (FY2025)

**Exhibit F:** 1978 Deloitte Audit Excerpts

**Exhibit G:** 50 States Operating Budgets (Alphabetical Order)

**Exhibit H:** Summary of Key Findings from the 1978 Audit

**Exhibit I:** The 33-Year Statutory Covenant (1982–2015)

**Exhibit J:** The Statutory Framework

**Exhibit K:** The Windfall Paradox

**Exhibit L:** Where Wielechowski Ends — and This Case Begins

**Exhibit M:** Authority Map — How Each Authority Supports Each Claim

**Exhibit N:** Narrative / Structural Timeline

**Exhibit O:** Timeline of Diversion (2016–2025)

**Exhibit P:** Structural Reliance Timeline (2016–2025)

**Exhibit Q:** Contributions to the General Fund (FY19–FY35)

**Exhibit R:** Alaska Constitution Article IX, Section 15 (Excerpt)

**Exhibit S:** AS 43.23.025 — Permanent Fund Dividend Formula (Excerpt)

**Exhibit T:** The FRANK Initiative: - AS 44.06.050 – Statement of Purpose -

AS 44.06.060 – Required Disclosure

# CERTIFICATE OF SERVICE

I hereby certify that on _____ May 8, 2026 _____, I caused a true and correct copy of

the foregoing document to be served on all Defendants by the method required for

service of process under the Federal Rules of Civil Procedure, including service upon

the State of Alaska through the Office of the Attorney General, and upon all named

officials in their official capacities.

I further certify that any additional parties appearing through counsel will be served

through the Court's electronic filing system upon their entry of appearance.

Executed on, _____ May 8, 2026 _____

/s/ Mark O. Nardini

**Mark O. Nardini, A.I.A.**

Plaintiff, Appearing Pro Se

Wasilla, Alaska